5 F.3d 541
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph John CUFF, Defendant-Appellant.
 No. 92-10637.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 11, 1993.
Decided Sept. 13, 1993.
 
 Appeal from the United States District Court for the District of Nevada, No. CR-91-00227-LDG; Lloyd D. George, District Judge, Presiding.
 D.Nev.
 AFFIRMED.
 Before: SNEED, POOLE, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Joseph John Cuff pled guilty to unarmed bank robbery. He appeals his sentence, contending he was not sentenced properly under the sentencing guidelines. The court classified Cuff as a career offender and denied his motion for a downward departure based on his personality disorder. We affirm.
 
 I.
 FACTS AND PRIOR PROCEEDINGS
 
 3
 On August 9, 1991, Cuff robbed a bank in Las Vegas, Nevada. On May 22, 1992, he pled guilty to bank robbery under 18 U.S.C. Sec. 2113(a). After two continuances, he was sentenced pursuant to the guidelines on October 21, 1992. The guideline range was 168 to 210 months, and the judge sentenced Cuff to serve 180 months.
 
 
 4
 At sentencing, the court classified Cuff as a career offender under U.S.S.G. Sec. 4B1.1. The presentence report detailed three prior felony convictions, one in 1973 and two in 1979, on which this status could be based, although the court relied only on the two 1979 convictions.
 
 
 5
 The 1973 California state conviction was for attempted robbery. Cuff was sentenced to 36 months probation and 270 days in an honor camp. He escaped after about a week in the honor camp and was caught and resentenced to a term of 6 months to 20 years. Cuff was released on parole on May 13, 1976, but violated his parole four months later and was sent back to prison. He was eventually released on April 6, 1977.
 
 
 6
 The 1979 convictions were for two separate robberies. First, on April 19, 1979, Cuff was convicted in federal district court in New Mexico for a Law Vegas, Nevada bank robbery and sentenced to fifteen years. Four days after this federal conviction, he was convicted in New Mexico state court for robbing a donut shop, and received a two to ten year sentence to be served concurrently with his federal sentence. He was paroled to a halfway house, escaped, returned to prison, and was eventually released on parole again in May 1991.
 
 
 7
 In addition, the district judge denied Cuff's motion for a downward departure based on his personality disorder. According to a court ordered psychological evaluation, Cuff has a personality disorder, which manifests itself in anti-social behavior, an absence of remorse, and an inability to keep a job. However, the evaluation also stated that Cuff is of average intelligence and does not have a mental illness.
 
 
 8
 In addition to denying his motion for a downward departure and sentencing him as a career offender, the court also denied Cuff's motion to withdraw his attorney and continue the sentencing hearing. Cuff filed a timely notice of appeal.
 
 II.
 JURISDICTION AND STANDARDS OF REVIEW
 
 9
 The district court had jurisdiction under 18 U.S.C. Sec. 3231. We have jurisdiction under 28 U.S.C. Sec. 1291. Application of the sentencing guidelines is reviewed de novo. United States v. Kohl, 972 F.2d 294, 297 (9th Cir.1992). The district court's factual findings in the sentencing phase are reviewed for clear error. United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992). A district court's discretionary refusal to depart from the sentencing guidelines is not reviewable on appeal. United States v. Morales, 898 F.2d 99, 101 (9th Cir.1990). A trial court's refusal to substitute counsel is reviewed for abuse of discretion. United States v. Castro, 972 F.2d 1107, 1109 (9th Cir.1992), as is the court's denial of a motion for continuance. United States v. Marsh, 894 F.2d 1035, 1039 (9th Cir.1989), cert. denied, 493 U.S. 1083 (1990).
 
 III.
 DISCUSSION
 
 10
 A. The downward departure for Cuff's personality disorder.
 
 
 11
 Cuff argues that the sentencing court erred in not departing downward from the guidelines because he has a personality disorder. He analogizes his position to that of a defendant with reduced mental capacity who may get a lower sentence for a non-violent offense under U.S.S.G. Sec. 5K2.13.
 
 
 12
 We cannot decide the merits of this argument because a sentencing judge's discretionary refusal to depart downward from the guideline range is not reviewable on appeal. Morales, 898 at 101. If a district court refuses to depart downward because it does not believe it has the authority to do so, the issue is reviewable. Id. at 102 n. 2. Cuff argues that it is unclear from the record whether the district court knew it had the authority to depart downward. This is not true.[1] Failure to depart, when the record is silent on the issue of authority and the sentence imposed is within the guideline range, is not appealable. United States v. Garcia-Garcia, 927 F.2d 489, 491 (9th Cir.1991).
 
 
 13
 B. Status of career offender.
 
 
 14
 Cuff deserved to be sentenced as a career offender because the instant offense was a felony crime of violence and he has at least two prior felony convictions for crimes of violence. U.S.S.G. Sec. 4B1.1. The presentence report listed three qualifying prior convictions: 1) a 1973 California state conviction for attempted robbery, 2) a 1979 federal conviction for a Las Vegas bank robbery, and 3) a 1979 New Mexico state conviction for robbery.
 
 
 15
 The sentencing judge did not use the 1973 conviction in his calculation because there was some confusion over whether it was too old.[2] Furthermore, Cuff argues that the two 1979 convictions should not be considered two separate sentences, but rather should be counted as one sentence because he believes the offenses were consolidated for sentencing pursuant to U.S.S.G. Sec. 4A1.2, comment. (n. 3).
 
 
 16
 1. The 1973 conviction.
 
 
 17
 The sentencing judge should include a prior violent felony conviction to calculate career offender status if the defendant served at least a thirteen month sentence for the prior conviction and was incarcerated during any part of the fifteen year period preceding the date of the instant offense. U.S.S.G. Sec. 4A1.2(e).[3] Here, Cuff had to have been in jail for the 1973 offense after August 9, 1976.
 
 
 18
 The 1973 conviction should have been used to calculate Cuff's career offender status.[4] The record clearly shows that the 1973 conviction was not too old. For the attempted robbery, Cuff was originally sentenced to 36 months probation and 270 days at an honor camp. He escaped very shortly after arriving at the honor camp and was caught and resentenced to a term of 6 months to 20 years. He was paroled on May 13, 1976. If the story had ended here, Cuff would be right and the 1973 conviction would not be counted. However, the presentence report shows that he violated his parole four months later and was sent back to prison. He was eventually released on April 6, 1977. Thus, he was incarcerated for the 1973 attempted robbery conviction within fifteen years of the instant offense. Harrington, 923 F.2d at 1375.
 
 
 19
 2. The two 1979 convictions.
 
 
 20
 Cuff argues that the two 1979 convictions were consolidated for sentencing purposes and thus should only count as one conviction for career offender purposes.[5] Prior sentences in related cases are treated as one sentence for career offender purposes. U.S.S.G. Sec. 4A1.2(a)(2). Prior sentences are related if the offenses were consolidated at sentencing. U.S.S.G. Sec. 4A1.2, comment. (n. 3). The guidelines do not define the word "consolidated."
 
 
 21
 The following account can be pieced together from the presentence report. On January 19, 1979, Cuff robbed the Bank of Nevada in Las Vegas, Nevada. He bought a car and fled to Albuquerque, New Mexico. Later that same day, January 19th, he was caught and arrested for federal bank robbery. On January 22, 1979, presumably while in custody, Cuff was arrested for robbing a donut shop in New Mexico.[6] He moved his Nevada federal bank robbery case to the District of New Mexico pursuant to Fed.R.Crim.P. 20. On April 19, 1979, he received a fifteen year sentence for federal bank robbery. Four days later, on April 23, 1979, he received a two to ten year sentence on the state robbery charge, to run concurrently with the federal sentence. He served his sentences in the New Mexico State Penitentiary.
 
 
 22
 Cuff's 1979 convictions were not consolidated at sentencing, so the judge properly counted them both in his career offender calculation. The analysis of this issue is fact specific. For example, if a defendant receives identical concurrent sentences imposed by the same judge at the same hearing, the offenses should be considered "consolidated" at sentencing. United States v. Smith, 991 F.2d 1468, 1473 (9th Cir.1993) (holding that where convictions were sentenced in same proceeding by same judge under same docket number, cases were consolidated for sentencing); United States v. Bachiero, 969 F.2d 733, 734 (9th Cir.1992) (despite lack of consolidation order, where defendant received identical concurrent sentences from same judge at same hearing, cases were consolidated); United States v. Chapnick, 963 F.2d 224, 228-29 (9th Cir.1992) (holding that where case was transferred for sentencing purposes and judge imposed identical concurrent sentences, cases were consolidated at sentencing); United States v. Davis, 922 F.2d 1385, 1390 (9th Cir.1991) (despite concurrent sentences, cases were not consolidated where no formal consolidation, different docket numbers, separate hearings, crimes happened two years apart). Concurrent sentences, without more, do not render the sentences consolidated. United States v. Smith, 905 F.2d 1296, 1303 (9th Cir.1990).
 
 
 23
 Here, the two sentences were not consolidated. There were different docket numbers, different sentencing dates and judges, and different jurisdictions. Furthermore, while the state sentence was to run concurrently, it was not identical to the federal sentence. Cuff argues that since formal consolidation is impossible between state and federal offenses, he is on worse and unfair footing compared to defendants who commit two crimes in the same jurisdiction. However, the lack of formal consolidation is not dispositive. Smith, 991 F.2d at 1473; Bachiero, 969 F.2d at 734.
 
 
 24
 C. Motion to substitute attorney and continue sentencing hearing.
 
 
 25
 The district court did not abuse its discretion when it denied Cuff's motion to substitute a new attorney and continue his sentencing hearing. We consider three things in determining whether a district judge abused his discretion in refusing to substitute counsel: 1) the timeliness of the motion, 2) the adequacy of the district court's inquiry into the defendant's complaint, and 3) whether the asserted conflict resulted in a complete breakdown in communication between lawyer and client. Castro, 972 F.2d at 1109.
 
 
 26
 First, the motion came eight days before sentencing, and the judge thought it was "very, very late." In addition, the court had already granted two continuances--at least one of which was at Cuff's request.
 
 
 27
 Second, the court did inquire into the defendant's complaint. Cuff said he wanted a new attorney because he thought the presentence report contained inaccuracies and did not adequately present his history of family and psychological problems. The presentence report contained only one arguable inaccuracy, which did not affect Cuff's sentence and which he conceded would not "make a difference." E.R. 50. As for Cuff's family history, the judge urged the defendant to tell him more about it, to which Cuff replied, "I ain't got nothing to say." Furthermore, the judge concluded that there had been no communication problem between Cuff and his attorney.
 
 
 28
 Last, the court had reason to be suspicious of Cuff's request for a continuance. The government had received information that Cuff was planning to escape from custody. The court properly took this threat seriously in light of Cuff's history of escapes.[7]
 
 
 29
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At the May 22, 1992 plea hearing:
 The Court: Under the Sentencing Guidelines, the sentencing judge must select a sentence from within the guideline range. If however your case presents unusual features, the law does permit the judge to depart from the guidelines and to impose a sentence either below or above the recommended guideline range.
 At the October 21, 1992 sentencing hearing:
 Ms. Woolf (defense counsel): I did also cite several cases in the motion for downward departure that makes it pretty clear that this is within your discretion and is--can be an appropriate downward departure. Thank you.
 The Court: I've--the Cotto case and the Poff case, you've cited. And you're suggesting that the Court can consider a variety of factors not contained within the guidelines themselves.
 Mr. Cuff, the Court will be pleased to hear from you if you wish to speak in mitigation of punishment. And give me whatever direction, background about your life that you think has not been considered.
 
 
 [2]
 In the section of the presentence report which described the 1973 attempted robbery, it said "Mr. Cuff was discharged (released) from prison on April 6, 1977." However, Cuff maintained that he was released in 1975, not 1977, for this offense. Because of this confusion, the sentencing judge did not include the 1973 conviction in calculating the career offender enhancement. Fed.R.Crim.P. 32(c)(3)(D)
 
 
 [3]
 Contrary to what Cuff asserts, the provisions of Sec. 4A1.2 (Definitions and Instructions for Computing Criminal History) are used to count convictions for the career offender enhancement. U.S.S.G. Sec. 4B1.2, comment. (n. 4); United States v. Harrington, 923 F.2d 1371, 1375 (9th Cir.1991), cert. denied, 112 S.Ct. 164 (1991)
 
 
 [4]
 The panel can affirm on any ground supported by the record. O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir.1990)
 
 
 [5]
 Even if the two 1979 convictions were consolidated for sentencing purposes, Cuff still qualifies as a career offender because he has at least two prior convictions for crimes of violence: the 1973 attempted robbery conviction and the 1979 convictions
 
 
 [6]
 It is unclear when Cuff robbed the donut shop. It must have happened either on January 19th, soon after he arrived in New Mexico but before he was arrested, or sometime earlier
 
 
 [7]
 Cuff has three escapes: 1) from the honor camp in 1973, 2) in 1978 from a Rockville Maryland facility where he was serving a sentence for larceny of a motor vehicle, and 3) in 1984 from a halfway house while on parole for the 1979 federal bank robbery